Wallace L. FATLAND, Appellant,

v.

QUAKER STATE CORPORATION,
Appellee.

No. 94–3587.

United States Court of Appeals,
Eighth Circuit.

Submitted May 16, 1995.

Decided Aug. 10, 1995.

J.P. Dosland, Moorhead, MN, argued, for appellant.

Sarah Andrews Herman, Fargo, ND, argued, for appellee.

Before WOLLMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and BOGUE,* Senior District Judge.

WOLLMAN, Circuit Judge.

Wallace L. Fatland brought this action against his former employer, Quaker State Corporation (Quaker State), as a result of his discharge. He alleged state law claims of unlawful discrimination, deceit, negligent misrepresentation, and promissory estoppel. Finding no disputes of material fact, the district court[1] granted summary judgment in favor of Quaker State. We affirm.

## I.

Fatland was employed by Quaker State as a sales representative from November 1978 to November 1992. His assigned sales territory included Minnesota, North Dakota, and South Dakota. Fatland's duties included the marketing of Quaker State products, programs, and services to distributors, working with distributors to develop retail sales, and acting as a liaison between Quaker State and its distributors. Fatland had no written employment contract with Quaker State.

In May 1978, Quaker State implemented a Conflict of Interest Policy (the "Policy") that was designed to define appropriate standards with respect to relationships between all officers, directors, and employees of Quaker State and outside organizations. The Policy provides that "no director, officer, or employee should have any conflict of interest situation with [Quaker State]." The Policy defines a conflict of interest as a situation

"where a director, officer, or employee has an outside personal interest which is or has the *potentiality* of being at variance with the best interests of [Quaker State], even though such interest may have no direct financial impact on [Quaker State]." (emphasis in original). As a means of further defining a conflict of interest situation, the Policy provides that "[n]o director, officer, or employee shall own, or have a substantial interest, nor render managerial or consultation services (whether or not for compensation) to an outside entity doing business with or competing with [Quaker State] without consent of the Chief Executive Officer [CEO]." Finally, the Policy states that officers, directors, and employees are required to disclose any situation presenting a conflict of interest to their superior, to discuss with that superior any question as to the application or interpretation of the Policy, and to sign an annual statement representing that they have read and are in compliance with the Policy. During each year of his employment, Fatland represented to Quaker State that he was in compliance with the Policy.

Fatland alleges that he met with Clyde Shelkey, the trainer for and manager of Quaker State's fast lube programs, in May, June, and July 1991 to discuss the possibility of opening a fast lube operation. Shelkey was not the CEO of Quaker State, nor was he Fatland's direct superior. During one of their meetings, Shelkey allegedly advised Fatland that it was not a violation of the Policy for a Quaker State employee to own a fast lube business and that he (Shelkey) was considering starting a business of his own. Shelkey also allegedly stated that another Quaker State employee had received a letter from the Quaker State legal department opining that it was not a conflict of interest for that employee to own a fast lube business. Fatland alleges that in reliance on Shelkey's statements, he made a commitment to lease a site for a fast lube operation in October 1991. Fatland did not, however, discuss the matter with his supervisor, nor

* The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. The Honorable Karen K. Klein, United States Magistrate Judge for the District of North Dakota, presiding by consent of the parties.

did he obtain permission from Quaker State's CEO.

In late September or early October 1992, Wayne Monge, a Quaker State customer, approached a Quaker State representative at a trade meeting and complained that he had been called upon by Fatland in his capacity as a Quaker State representative and had given Fatland information about his (Monge's) fast lube business and that Monge had thereafter learned that Fatland owned Econo Lube, a fast lube business near Monge's business. Upon learning this information, Quaker State advised Fatland that he would have to divest himself of any ownership interest in Econo Lube if he wished to maintain his employment with Quaker State. Fatland chose not to liquidate his interest in Econo Lube, and his employment was terminated in November 1992.

Fatland sued Quaker State in North Dakota state court, asserting that his termination constituted a violation of Chapter 14–02.4, N.D.Cent.Code Ann. Fatland also asserted claims of deceit, negligent misrepresentation, and promissory estoppel. Quaker State removed the case to federal court and thereafter moved for summary judgment. The district court granted the motion, holding that Fatland was an employee who could be terminated at will and that he could not have justifiably relied on any statements that Shelkey may have made concerning the Policy.

## II.

We review a grant of summary judgment *de novo*, applying the same standards employed by the district court. *Sperry v. Bauermeister, Inc.*, 4 F.3d 596, 597 (8th Cir.1993); Fed.R.Civ.P. 56(c). We will affirm the grant of summary judgment if the evidence, viewed in the light most favorable to the non-moving party, shows that there is no dispute of material fact and that the moving party is entitled to judgment as a matter of law. *McIlheran v. Lincoln National Life Insurance Co.*, 31 F.3d 709, 710 (8th Cir. 1994). We apply the substantive law of North Dakota to this diversity case and review the district court's interpretation of that law *de novo*. *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

In North Dakota, "employment without a definite term is presumed to be at will and the employer has the right to terminate the employee with or without cause." *E.g. Bykonen v. United Hospital*, 479 N.W.2d 140, 141 (N.D.1992). North Dakota has codified this rule. *See* N.D.Cent.Code Ann. § 34–03–01. There are, however, exceptions to the at-will doctrine. Several of those exceptions, contained in Chapter 14–02.4, N.D.Cent.Code Ann., serve to prohibit an employer from engaging in certain discriminatory practices. For purposes of this case, the relevant exception is set forth in section 14–02.4–03.

At the time Fatland's employment was terminated, section 14–02.4–03 provided in pertinent part:

> It is a discriminatory practice for an employer ... to discharge an employee ... because of ... participation in lawful activity off the employer's premises during nonworking hours.

This exception to the at-will doctrine also has an exception. Section 14–02.4–08 provides:

> Notwithstanding sections 14–02.4–03 through 14–02.4–06, it is not a discriminatory practice for ... an employer to ... discharge an individual from a position on the basis of that individual's participation in a lawful activity that is off the employer's premises and that takes place during nonworking hours ... if that participation is contrary to a bona fide occupational qualification that reasonably and rationally relates to employment activities and the responsibilities of a particular employee or group of employees, rather than to all employees of that employer.

Quaker State contends that the Policy sets forth a bona fide occupational qualification that reasonably and rationally relates only to employees, such as Fatland, whose involvement in an off-hours activity constitutes a conflict of interest with the employer because of the position of the employee within the company. Fatland's duties included the marketing of Quaker State products. Monge's

complaint about having divulged business information to a competitor employed in a responsible position by Quaker State constituted a legitimate source of concern to Quaker State. Had Fatland been employed as, say, a janitor, Quaker State argues, his operation of a fast lube operation would not necessarily have had a deleterious effect on Quaker State's relationship with its other customers. It is for this reason, then, that Quaker State requires only key employees to submit annual signed statements of compliance with its Policy, notwithstanding the Policy's apparent inclusion of all employees.

 We conclude that Quaker State's argument is well taken. Prohibiting employees such as Fatland from operating off-hours businesses that would benefit from confidential information that the employees' positions within the company would enable them to secure from competitors, resulting in resentment towards, and termination of business with, the employer is a bona fide occupational qualification that is reasonably and rationally related to a particular employee or group of employees within the meaning of section 14–02.4–08. Thus, Quaker State did not run afoul of section 14–02.4–03 when it terminated Fatland's employment.[2]

### III.

Fatland next argues that the district court erred in entering judgment in favor of Quaker State on his remaining claims of deceit, negligent misrepresentation, and promissory estoppel. He argues that in view of the statements allegedly made to him by Shelkey, Quaker State is liable under the law of agency. Thus, he argues, summary judgment was inappropriate because there are factual issues to be resolved·concerning the effect of those statements.

Viewing the evidence in the light most favorable to Fatland, we do not agree with his contention that there is a genuine issue of fact concerning Shelkey's authority to bind

Quaker State on matters relating to the Policy. Fatland presents no evidence from which to infer that Shelkey had actual authority to deal with employees on Policy matters, nor does he allege any facts to support a claim that Quaker State allowed employees to believe that Shelkey had such authority.

Moreover, Fatland was well aware of the requirements of the Policy, and he knew that Shelkey was not his superior or the CEO. Thus, he could not have justifiably relied on Shelkey's statements. *See, e.g., O'Connell v. Entertainment Enterprises, Inc.,* 317 N.W.2d 385, 389–90 (N.D.1982) (justifiable reliance is an essential element of equitable or promissory estoppel); *Dvorak v. American Family Mutual Insurance Co.,* 508 N.W.2d 329, 332 (N.D.1993) (key element of fraud or deceit claim is reliance).

The judgment is affirmed.

---

**2.** We note that section 14–02.4–03 was amended in 1993 to read as follows:

It is a discriminatory practice for an employer ... to discharge an employee ... because of ... participation in lawful activity off the employer's premises during nonworking hours which is not in direct conflict with the essential business-related interests of the employer....

N.D.Cent.Code Ann. § 14–02.4–03 (Michie Supp. 1993).