Nos. 95-1253/1305

Dale Nelson,                          *
                                      *
      Appellee/Cross-Appellant,       *
                                      *
          v.                          *
                                      *
J. C. Penney Company, Inc.,           *    Appeals from the United States
                                      *    District Court for the
      Appellant/Cross-Appellee.       *    Northern  District  of Iowa.
                                      *
                                      *
                                      *
                                      *
Equal Employment                      *
Opportunity Commission,               *
                                      *
      Amicus Curiae.                   *

Submitted:  September 13, 1995

Filed:  January 24, 1996

Before LOKEN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Dale Nelson began working for J. C. Penney department stores in 1960. In 1983, he became the manager of a store in Iowa. In late 1990, he was transferred to become the manager of a smaller store in North Dakota. Four and a half months later, shortly after he turned 55, he was fired.

Mr. Nelson sued Penney in federal court in Iowa in late 1991, alleging age discrimination, retaliatory discharge (he had filed an

age discrimination charge with the appropriate administrative agency a month before he was fired), and discharge in violation of the Employee Retirement Income Security Act (ERISA) (all under federal law), and disability discrimination, invasion of privacy, intentional infliction of emotional distress, and defamation (under Iowa law).

At an eight-day mixed jury/bench trial in mid-1993, the trial court dismissed the claims of invasion of privacy and intentional infliction of emotional distress for failure to state a claim. The trial court did not instruct the jury on the claim of defamation. The jury then found for Mr. Nelson on the age discrimination and retaliatory discharge claims. The trial court found for Penney on the claims of discharge in violation of ERISA and disability discrimination. See Nelson v. J. C. Penney Co., 858 F. Supp. 914 (N.D. Iowa 1994). After denying post-trial motions, the trial court entered judgment for Mr. Nelson in the amount of approximately $930,000. Both sides appeal. We affirm in part and reverse in part and remand the case for the entry of the appropriate judgments.

I.

Penney contended that Mr. Nelson was fired, after repeated warnings, because of an abrasive and intimidating management style. Mr. Nelson contended that Penney's stated reason for firing him was merely a pretext for age discrimination. The trial court denied Penney's motions for judgment as a matter of law, both at trial and post-trial, on the age discrimination claim. Penney appeals those denials. In reviewing the denial of a defendant's motion for judgment as a matter of law in an age discrimination case submitted to a jury, we "focus on the ultimate factual issue of whether the employer intentionally discriminated against the employee on account of age." Nelson v. Boatmen's Bancshares, Inc., 26 F.3d

-2-

796, 800 (8th Cir. 1994). That process requires an evaluation of three different questions. Id. at 801.

First, we determine whether the plaintiff established a prima facie case -- i.e., that he was "within the protected age group, ... [that] he was performing his job at a level that met his employer's legitimate expectations, ... [that] he was discharged, and ... [that] his employer attempted to replace him." Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 448 (8th Cir. 1993). For the purposes of this appeal, we assume that Mr. Nelson established a prima facie case and thus created a presumption of unlawful age discrimination by Penney. Nelson, 26 F.3d at 801. The existence of that presumption placed an obligation upon Penney to rebut it, if possible. Id.

To rebut a presumption of unlawful age discrimination created by a plaintiff's prima facie case, an employer has to offer reasons for its actions that, if believed by a jury, would allow the jury to conclude that the plaintiff's age was not the reason for his termination. Id. Penney did so. There was evidence that many store managers older than Mr. Nelson were still working and had even been promoted. There was additional, and considerable, evidence of Mr. Nelson's difficulties in dealing with his employees in Iowa and of a continuation of those difficulties after his transfer to North Dakota (there was, moreover, no evidence that Penney failed to discipline younger store managers with the same or similar difficulties). Finally, both of the supervisors who participated in the decision to fire Mr. Nelson denied that his age was a factor in that decision.

Because Penney presented evidence of reasons other than age for its decision to terminate Mr. Nelson, it is considered to have rebutted his prima facie case. Id. The presumption of unlawful age discrimination therefore drops out of the case, id., and we

-3-

evaluate, last, only whether Mr. Nelson presented evidence "capable of proving that the real reason for his termination was discrimination based on age." Id. Such evidence must include "'conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude'" of an extent "'sufficient to permit the [jury] to infer that that attitude was more likely than not a motivating factor in the employer's decision.'" Id. at 800, quoting Ostrowski v. Atlantic Mutual Insurance Companies, 968 F.2d 171, 182 (2d Cir. 1992). With that standard in mind, we examine the evidence offered by Mr. Nelson as the basis for his age discrimination claim. Nelson, 26 F.3d at 802.

We have read the entire trial transcript with care. As far as we can tell, Mr. Nelson presented four specific bases for his claim of age discrimination. The first was the fact that when he was transferred to North Dakota, and again when he was fired, his replacements were younger than he was. Then, late in 1990, around the time that Mr. Nelson was transferred to the store in North Dakota, the district manager for Iowa (Mr. Nelson's prior supervisor) called the district manager for North Dakota (Mr. Nelson's new supervisor) to advise him about Mr. Nelson's background. During that call, the district manager for North Dakota made notes, among which he included the information that Mr. Nelson was 54 years old. That inclusion was the second basis for Mr. Nelson's age discrimination claim. At a lunch in early 1991 attended by Mr. Nelson, his wife, the district manager for North Dakota, and two other Penney employees, the district manager told Mr. Nelson that he knew Mr. Nelson's age. That statement was the third basis for Mr. Nelson's age discrimination claim. Finally, although Mr. Nelson received negative comments on his management style from various supervisors earlier in his career, he was never otherwise disciplined or transferred because of them until he was 54 years old.

-4-

It is true that the replacements for Mr. Nelson at both stores were younger than he was; at the Iowa store, however, the age difference between Mr. Nelson and his successor was only one month. It is also true that the district manager for North Dakota wrote down Mr. Nelson's age when discussing him with the district manager for Iowa. But the fact that Mr. Nelson's replacement in North Dakota was significantly younger than he possesses, in our view, insufficient probative value to persuade a reasonable jury that Mr. Nelson was discriminated against. Such a fact is consistent with age discrimination, but it cannot alone support a reasonable inference of it. Nor do we believe that the fact that the district manager knew Mr. Nelson's age could furnish the basis for a reasonable inference that his age was a basis for his termination. A fact finder may not simply convert a condition that is necessary for a finding of liability (here, knowledge of a plaintiff's age) into one that is sufficient for such a finding.

We have said that in "some cases, evidence that an employer's proffered nondiscriminatory explanation is wholly without merit or obviously contrived might serve double duty, ... permitting an inference that age discrimination was a motivating factor in a plaintiff's termination." Id. at 801. This is not such a case. There was no conflicting testimony or other substantial evidence of deviousness on the part of the employer, see id. at 802, from which a reasonable fact finder could conclude that the employer's proffered reasons for Mr. Nelson's termination were pretextual. See also Gaworski v. ITT Commercial Finance Corp., 17 F.3d 1104, 1110 (8th Cir. 1994), cert. denied, 115 S. Ct. 355 (1994). We do not think that the simple fact that the employer's testimony is necessarily self-interested is enough under our previous cases to allow the jury to find that the employer's proffered reasons were pretextual. If it were, then any case in which the plaintiff makes a prima facie case is a submissible one because it must go to the jury whether or not the employer produces bona fide reasons for its

actions -- and we have never held that.  Mr. Nelson's personnel file did contain occasional comments from earlier supervisors about his need to improve his relationships with his employees.  There is no evidence in the record, however, showing that any of those remarks was preceded by the number, intensity, or scope of employee complaints that occurred in the year before Mr. Nelson was fired.

In view of all of these circumstances, and considering the insubstantial character of the evidence presented with respect to age discrimination, we cannot agree with the trial court that Mr. Nelson established a submissible case that age "'<u>actually motivated</u>'" Penney's decision to fire him.  <u>Nelson</u>, 26 F.3d at 800, quoting <u>Hazen Paper Co. v. Biggins</u>, 113 S. Ct. 1701, 1706 (1993) (emphasis supplied in <u>Nelson</u>).  We see no evidence "'directly reflecting the alleged discriminatory attitude.'"  <u>Nelson</u>, 26 F.3d at 800, quoting <u>Ostrowski</u>, 968 F.2d at 182.  We therefore vacate the judgment on the age discrimination claim and remand the case for the entry of judgment for Penney on that claim.

## II.

The evidence of retaliatory discharge was even less substantial, consisting only of the facts that Mr. Nelson was fired a month after filing an age discrimination charge with the appropriate administrative agency and that both of the supervisors involved in firing Mr. Nelson knew of that charge.  There is no evidence in the record that others who filed age discrimination charges were fired, that Mr. Nelson's supervisors discussed the filing with each other, or that either of them even commented to Mr. Nelson on that filing.  There was considerable evidence, moreover, that Mr. Nelson was reprimanded several times and was given a final warning about the status of his job before his supervisors knew of the age discrimination charge.

In light of all of these circumstances, we cannot agree with the trial court that the mere coincidence of timing established a submissible case of retaliatory discharge. See, e.g., Caudill v. Farmland Industries, Inc., 919 F.2d 83, 86-87 (8th Cir. 1990) (close temporal proximity between filing of age discrimination charges and firing of plaintiff was only a "slender reed of evidence" for which "rank speculation" would be required to assume causal connection between the two events, in light of other evidence presented); see also Quiroga v. Hasbro, Inc., 934 F.2d 497, 501 (3d Cir. 1991), cert. denied, 502 U.S. 940 (1991) ("inference based on timing alone" was insufficient in light of other evidence presented). We therefore vacate the judgment on the retaliatory discharge claim and remand the case for the entry of judgment for Penney on that claim.

### III.

Mr. Nelson cross-appeals the trial court's judgment for Penney on his claims of discharge in violation of ERISA and disability discrimination. We have carefully read the entire trial transcript. We see no basis for vacating those judgments.

### IV.

Mr. Nelson's claim under state law for invasion of privacy was based on a supervisor's opening of Mr. Nelson's locked desk at the North Dakota store in his absence to obtain his personnel file. The trial court dismissed that claim on the first day of trial, stating that the alleged tort had occurred in North Dakota and that no such tort is or would be recognized in North Dakota. Mr. Nelson cross-appeals that dismissal.

The North Dakota Supreme Court has acknowledged that in the states where the tort of invasion of privacy is recognized, it usually takes one or more of four forms -- "(1) appropriation of a name or picture for commercial purposes without written consent;

(2) intrusion upon one's solitude or seclusion; (3) public disclosure of private information which is not necessarily defamatory; and (4) placing a person in a false light ... in otherwise legitimate news stories." City of Grand Forks v. Grand Forks Herald, Inc., 307 N.W.2d 572, 578 n.3 (N.D. 1981). In at least two cases, the North Dakota Supreme Court has assumed for the sake of argument that a cause of action may exist for commercial appropriation of a name without consent but has sidestepped the question of the actual existence of that tort by finding consent to use of the name. See American Mutual Life Insurance Co. v. Jordan, 315 N.W.2d 290, 296 (N.D. 1982), and Volk v. Auto-Dine Corp., 177 N.W.2d 525, 529 (N.D. 1970). In at least one case, that court has assumed for the sake of argument that a cause of action may exist for public disclosure of private information but has sidestepped the question of the actual existence of that tort by finding no evidence of proximate cause. See Schleicher v. Western State Bank, 314 N.W.2d 293, 296 (N.D. 1982).

We have found no authority, however (and have been directed to none), that would allow us to conclude that North Dakota might recognize a cause of action for the type of intrusion into a person's solitude or seclusion of which Mr. Nelson complains. Indeed, although it has been given a number of opportunities to hold that some types of invasion of privacy are actionable, the Supreme Court of North Dakota has consistently refused to do so. We believe that the trial court therefore correctly decided that this studied reluctance does not bode well for the acceptance of this kind of cause of action in North Dakota in the future. Accordingly, we decline to disturb the trial court's ruling with respect to the claim for invasion of privacy.

In his reply brief, Mr. Nelson argues that Penney never pleaded the applicability of North Dakota law and, therefore, that the law of Iowa (where the case was tried) should have been

applied. That argument might prevail in the Iowa state courts (a question upon which we express no opinion), but Mr. Nelson sued in federal court, where pleadings are governed by the federal rules. See, e.g., Bank of St. Louis v. Morrissey, 597 F.2d 1131, 1134-35 (8th Cir. 1979); see also Asay v. Hallmark Cards, Inc., 594 F.2d 692, 698-99 (8th Cir. 1979) ("a federal court cannot be bound by a state's technical pleading rules"). "The federal courts are required to take judicial notice of the laws of every state of the union. Consequently, it is not necessary to plead state law, whether it be the forum state's law or the law of another state." See 5 C. Wright and A. Miller, Federal Practice and Procedure: Civil 2d § 1253 at 357-58 (1990). Since Mr. Nelson does not contend that the trial court interpreted Iowa conflicts law improperly, we reject the argument that Penney's failure to plead the applicability of North Dakota law deprives Penney of the benefit of that law on the claim for invasion of privacy.

V.

Mr. Nelson had serious health problems beginning in mid-1989. His claim under state law for intentional infliction of emotional distress was based on Penney's transferring him to North Dakota "with wanton disregard for [his] physical and mental health." The trial court dismissed that claim on the first day of trial, stating that because Mr. Nelson had no expert testimony to offer on the question of emotional distress, he could not prevail, as a matter of law. Mr. Nelson cross-appeals that dismissal.

In dismissing this claim, the trial court relied on Vaughn v. Ag Processing, Inc., 459 N.W.2d 627, 636 (Iowa 1990) (en banc), in which the Iowa Supreme Court held that when physical problems are alleged to have derived from emotional distress, expert testimony is required. We are dubious about the applicability of Vaughn in the absence of claims for physical problems consequent to emotional distress (and Mr. Nelson evidently does not allege any such

-9-

physical problems).  We note, however, that Mr. Nelson made no argument in the trial court (or, for that matter, in his briefs on cross-appeal) that Vaughn did not apply or that his claim for intentional infliction of emotional distress could survive based solely on his subjective reaction to his transfer.  Indeed, Mr. Nelson's lawyer stated at trial, with respect to Vaughn, that he had no "contrary authority" and that Vaughn appeared to control ("that appears to be the Iowa law as far as what the cases have said").  Such a concession amounts, in our view, to a waiver (or an abandonment) of Mr. Nelson's claim for intentional infliction of emotional distress.

On cross-appeal, moreover, Mr. Nelson offers arguments based on the sufficiency of the evidence on his claim for intentional infliction of emotional distress.  He made none of those arguments in the trial court, as far as we can tell.  Under all of these circumstances, we decline to disturb the trial court's ruling on Mr. Nelson's claim for intentional infliction of emotional distress.  See, e.g., Pedigo v. P.A.M. Transport, Inc., 60 F.3d 1300, 1304 (8th Cir. 1995).

## VI.

Mr. Nelson's defamation claim was based on the alleged compelled self-publication by Mr. Nelson to two of his employees of statements about himself -- but written by Penney -- that Mr. Nelson considered defamatory.  He submitted two proposed jury instructions on defamation before trial.  After the close of the evidence, the trial court gave to the parties a set of proposed jury instructions.  No instruction on defamation was included in that set.

During the jury instructions conference, the trial court asked the parties to specify, with respect to the set given to them, both the instructions objected to and any instructions omitted but still

requested. The lawyer for Mr. Nelson asked for the addition of two jury instructions, neither of which related to defamation, and stated that he had "no other problems" with the trial court's set. On at least five other occasions, Mr. Nelson's lawyer repeated that he was "done," that he had "nothing else," that the trial court's set seemed "fine," that he could not "think of anything else," and that he had no further "problems or any record ... to make ... or anything else" to bring up with the trial court.

By his lawyer's explicit acceptance of the trial court's proposed jury instructions and his failure to offer during the jury instructions conference any additional instructions on defamation, Mr. Nelson abandoned his defamation claim. We therefore reject his argument on cross-appeal that the defamation claim should have been submitted to the jury.

## VII.

For the reasons stated, we affirm the trial court with respect to all of Mr. Nelson's claims except age discrimination and retaliatory discharge. We vacate the judgments on those claims, as well as the associated judgments awarding attorney's fees, and remand the case for the entry of judgment for Penney on all claims.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.