1998 ND 24

**Daniel HOUGUM, Plaintiff and Appellant,**

v.

**VALLEY MEMORIAL HOMES, Sears, Roebuck and Co., and Shane Moran, Defendants and Appellees.**

**Civil No. 970108.**

Supreme Court of North Dakota.

Jan. 27, 1998.

William E. McKechnie (argued), of William E. McKechnie & Associates, Grand Forks, for plaintiff and appellant.

Jane L. Dynes (argued), of Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for defendants and appellees Sears, Roebuck and Co. and Shane Moran.

Gerald J. Haga (argued), of Camrud, Maddock, Olson & Larson, Ltd., Grand Forks, for defendant and appellee Valley Memorial Homes.

NEUMANN, Justice.

[¶ 1] Daniel Hougum appealed from a summary judgment dismissing his action against Valley Memorial Homes (VMH), Sears Inc., and Shane Moran. We hold Hougum failed to raise disputed factual issues to support his claim against Moran and Sears for intrusion upon seclusion. We also hold Hougum raised disputed factual issues about whether VMH terminated him for lawful activity off its premises in violation of the North Dakota Human Rights Act. We affirm in part, reverse in part, and remand for further proceedings.

## I

[¶ 2] On December 16, 1994, Moran, a Sears loss prevention officer, observed an unidentified individual, later determined to be Hougum, masturbating in an enclosed toilet stall in a mens public restroom at a Sears store in Grand Forks. The restroom had three enclosed stalls separated by two metal partitions. Each stall had a locking metal door with a narrow gap between the door and the frame to accommodate hinges and latches for the door. The stall partitions and doors partially blocked the inside of the stall from view, but an occupant's feet and shins normally would be visible from the restroom's common area. There was a hole approximately 1.5 inches in diameter drilled in the shared partition between the middle stall and the stall furthest from the restroom entrance.

[¶ 3] Hougum used the middle stall in the restroom. Moran was on duty when he entered the restroom to relieve himself, and he occupied the stall furthest from the entrance. According to Moran, he thought no one else was in the restroom, and while reaching for toilet paper, he noticed movement through the hole, which was located about four to five inches directly above the toilet paper dispenser in his stall, and inadvertently observed an unidentified individual masturbating for "maybe ten seconds . . . [p]ossibly more or less." Moran left the restroom and called the Grand Forks Police Department from an adjacent pay phone.

[¶ 4] After police officers arrived at the store, they informed Moran the conduct he observed could be charged as disorderly conduct and indicated he could make a citizen's arrest. Moran executed a citizen's arrest form, and the police entered the restroom and arrested the individual, who they then determined was Hougum, for disorderly conduct. According to Hougum, without counsel's assistance, he pled guilty to disorderly conduct on December 20, 1994, and his plea was reported in the Grand Forks Herald. Hougum alleged he withdrew his guilty plea on January 6, 1995, and the charge was dismissed with prejudice on January 25, 1995.

[¶ 5] Meanwhile, Hougum's employer, VMH, learned about the Sears incident. Hougum was an ordained minister and was hired by VMH as a staff chaplain in 1980. On December 23, 1994, VMH representatives met with Hougum to discuss the Sears incident and his job with VMH. According to VMH, it was concerned about the effect of the Sears incident on his pastoral relationship with its residents. VMH also expressed concern about Hougum's work performance and his commitment to his duties as chaplain. After the December meeting, VMH placed Hougum on a leave of absence, and he agreed to undergo an evaluation. On January 19, 1995, VMH formally terminated Hougum's employment. According to Hougum, a VMH manager told him the termination was due to the Sears incident.

[¶ 6] Hougum sued Moran and Sears for invasion of privacy and intentional and negligent infliction of emotional distress. Hougum also sued VMH for violation of the North Dakota Human Rights Act, wrongful termination, breach of contract, and intentional and negligent infliction of emotional distress. The trial court granted summary judgment dismissing Hougum's claims, and he appealed.

## II

[¶ 7] We review this case under the summary judgment standards of N.D.R.Civ.P. 56. Summary judgment is a procedure for deciding an action without a trial if, after viewing the evidence in the light most favorable to the party opposing the motion and giving that party the benefit of all favorable inferences reasonably drawn from the evidence, there is no genuine dispute as to either the material facts or the inferences to be drawn from the undisputed facts, or if only a question of law is involved. *Hanson v. Cincinnati Life Ins.*, 1997 ND 230, ¶ 10, 571 N.W.2d 363.

[¶ 8] Although a party seeking summary judgment bears the initial burden of establishing there are no genuine issues of material fact, a party resisting summary judgment may not simply rely upon the pleadings or upon unsupported, conclusory allegations. *Miller v. Medcenter One*, 1997 ND 231, ¶ 15, 571 N.W.2d 358. *Kummer v. City of Fargo*, 516 N.W.2d 294, 296–97 (N.D. 1994). Rather, the resisting party must present competent admissible evidence by

affidavit or other comparable means which raises a disputed issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other documents containing evidence raising an issue of material fact. *Id.* If no evidence raising a disputed issue of material fact is presented, it is presumed the evidence does not exist. *Miller,* 1997 ND 231, ¶ 15, 571 N.W.2d 358. Disputes of fact become questions of law if reasonable persons can draw only one conclusion from the evidence. *Hanson,* 1997 ND 230, ¶ 11, 571 N.W.2d 363.

## III

## MORAN AND SEARS

### A

■ [¶ 9] Hougum contends the trial court erred in dismissing his claim against Moran and Sears for invasion of privacy. Hougum urges this Court to recognize a tort claim for invasion of privacy under the intrusion upon seclusion formulation of the Restatement (Second) of Torts §§ 652A and 652B (1977).

[¶ 10] Restatement (Second) of Torts § 652A (1977) outlines four forms for the tort of invasion of privacy:

"(1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.

"(2) The right of privacy is invaded by

"(a) unreasonable intrusion upon the seclusion of another, as stated in § 652B; or

"(b) appropriation of the other's name or likeness, as stated in § 652C; or

"(c) unreasonable publicity given to the other's private life, as stated in § 652D; or

"(d) publicity that unreasonably places the other in a false light before the public, as stated in § 652E."

[¶ 11] Restatement (Second) of Torts § 652B (1977) describes the elements for an action for unreasonable intrusion upon seclusion:

"One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."

[¶ 12] This Court has not decided whether a tort action exists in North Dakota for invasion of privacy. *See American Mut. Life Ins. Co. v. Jordan,* 315 N.W.2d 290, 295–96 (N.D.1982); *City of Grand Forks v. Grand Forks Herald, Inc.,* 307 N.W.2d 572, 578 n. 3 (N.D.1981); *Volk v. Auto–Dine Corp.,* 177 N.W.2d 525, 529 (N.D.1970); *See also Nelson v. J.C. Penney Co., Inc.,* 70 F.3d 962, 967 (8th Cir.1995) *rehearing and suggestion for rehearing en banc denied,* 75 F.3d 343, 347 (8th Cir.1996). Claims for invasion of privacy are recognized in some form in virtually all jurisdictions. Restatement (Second) of Torts § 652A, Reporter's Note in 1981 Appendix; W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 117 at 851 (5th ed.1984). *See also Lake v. Wal–Mart Stores, Inc.,* 566 N.W.2d 376, 378 (Minn.Ct.App.1997) *review granted* by Minnesota Supreme Court September 18, 1997 (identifying Minnesota as one of three states refusing to recognize tort of invasion of privacy).

[¶ 13] Here, assuming without deciding a claim for intrusion upon seclusion exists in North Dakota, we conclude Hougum failed to raise disputed issues of material fact to support such a claim.

■ [¶ 14] Under the Restatement, a claim for intrusion upon seclusion [1] requires

---

1. An intrusion upon seclusion does not depend upon publicity given to an invaded privacy interest and may be accomplished simply by use of senses, with or without mechanical aids, to observe another individual's private affairs. Restatement (Second) Torts, § 652B, Comments a and b.

   Restatement (Second) Torts § 652D (1977) outlines an invasion of privacy tort claim for "Publicity Given to Private Life." During oral argument to this Court, Hougum's counsel indi-

cated Hougum may not have pursued an intrusion upon seclusion claim against Moran and Sears if Moran had not reported the incident to the police and pursued a citizen's arrest. To the extent Hougum's suggestion implicates an invasion of privacy claim for publicity given to another's private life under § 652D, Hougum has not marshaled an argument under this form of the tort of invasion of privacy. We therefore limit our analysis to Hougum's intrusion upon seclusion claim.

(1) an intentional intrusion by the defendant, (2) into a matter the plaintiff has a right to keep private, (3) which is objectionable to a reasonable person. Restatement (Second) of Torts § 652B; *see Prosser and Keeton* at § 117, pp. 854–56; 62A Am.Jur.2d *Privacy* § 48 (1990). Under § 652B, a defendant must intentionally intrude upon the seclusion of another. *Lineberry v. State Farm Fire & Cas. Co.,* 885 F.Supp. 1095, 1098 (M.D.Tenn. 1995); *Bailer v. Erie Ins. Exch.,* 344 Md. 515, 687 A.2d 1375, 1381 (1997); *New Summit Assocs. v. Nistle,* 73 Md.App. 351, 533 A.2d 1350, 1354 (1987); *Harkey v. Abate,* 131 Mich.App. 177, 346 N.W.2d 74, 76 (1983); *Snakenberg v. Hartford Cas. Ins. Co.,* 299 S.C. 164, 383 S.E.2d 2, 6 (1989). Generally, there are two primary factors for analyzing a claim for intrusion upon seclusion: (1) the means used for the intrusion, and (2) the defendant's purpose for obtaining the information. *Prosser and Keeton* at § 117, p. 856.

[¶ 15] In tort claims for intrusion upon seclusion in a public restroom, the intrusion generally involves a preconceived or planned intrusion by surveillance equipment, or by surreptitious observations. *See Elmore v. Atlantic Zayre, Inc.,* 178 Ga.App. 25, 341 S.E.2d 905, 906–07 (1986); *Harkey,* 346 N.W.2d at 75. *Cf. New Summit Assocs. v. Nistle,* 73 Md.App. 351, 533 A.2d 1350, 1354 (1987) (absent evidence named defendants, or their agents, actually participated in observation through mirror in plaintiff's apartment bathroom, there was no basis for claim for intentional intrusion upon seclusion against those defendants); *Lewis v. Dayton Hudson Corp.,* 128 Mich.App. 165, 166, 339 N.W.2d 857, 858 (1983) (surveillance of plaintiff in department store fitting room); *Kjerstad v. Ravellette Publications, Inc.,* 517 N.W.2d 419, 422 (S.D.1994) (sufficient evidence to submit intrusion upon seclusion claim to jury where there was evidence male employer observed three female employees on different occasions through hole in workplace bathroom wall); *Annot., Retailer's surveillance of fitting or dressing rooms as invasion of privacy,* 38 A.L.R.4th 954 (1985).

[¶ 16] In *Harkey,* patrons at a roller rink alleged the rink had installed see-through panels in a restroom ceiling which permitted surreptitious surveillance of patrons using the restroom. The Michigan Court of Appeals held the patrons had a right to privacy in the public restroom, and the installation of hidden viewing devices constituted an interference with privacy that a reasonable person would find highly offensive. *Harkey,* 346 N.W.2d at 76. In *Harkey,* the means of the intrusion demonstrated a preconceived and intentional effort to intrude upon the privacy of another by a method that served no legitimate purpose and was objectionable to a reasonable person.

[¶ 17] In *Elmore,* a store customer complained about homosexual activity in the store's public restroom, and the store's loss prevention manager observed suspicious behavior while inspecting the restroom. Using a location above the restroom, the store's security staff observed individuals in an enclosed stall, and based on those observations, an individual was arrested and pled guilty to sodomy. That individual subsequently sued the store for intrusion upon seclusion. The Georgia Court of Appeals affirmed summary judgment for the store. *Elmore,* 341 S.E.2d at 907. The court said the observed individual had an interest in privacy within the enclosed restroom stall, but recognized that right of privacy was not absolute and was subordinate to other interests. *Id.* at 906. The court held the store's intrusion upon the individual's seclusion was, as a matter of law, not unreasonable because the intrusion was not for the purpose of personally invading another's privacy, any privacy interest was outweighed by the store's interest in providing crime-free restrooms, and there was sufficient cause for suspicion of criminal activity to justify the intrusion. *Id.* at 906–07.

[¶ 18] In *Lewis,* 339 N.W.2d at 861, the Michigan Court of Appeals affirmed a summary judgment dismissal of a claim for intrusion upon seclusion where a department store employee observed a customer in a fitting room which had signs informing the customers the room was under surveillance by store personnel. The court recognized the right of privacy was not absolute and was subordinate to rights which spring from some business relations. *Id.* at 859. The court held the customer's expectation of privacy was diminished by the signs in the

fitting room, and the observation by the store's security guard, who was the same sex as the customer, was not objectionable. *Id.* at 860–61.

[¶ 19] In *Kjerstad,* there was evidence a male employer used a vacant room next to a workplace restroom on several occasions to observe three female employees through a hole in the wall. The court held the evidence was sufficient to submit the invasion of privacy claim to the jury. *Kjerstad,* 517 N.W.2d at 424.

[¶ 20] Those tort cases for intrusion upon seclusion recognize a privacy interest in an area like an enclosed stall in a public restroom, but also acknowledge that privacy interest is not absolute. The viability of those tort cases generally turns on the purpose of the intrusion and whether the method of surveillance constitutes an intentional intrusion which is objectionable to a reasonable person.

[¶ 21] Here, there was no evidence Moran or Sears drilled the hole in the partition between the two stalls, and there was evidence Sears had, on several occasions, placed a metal plate over the hole, but unidentified persons had removed the plate. According to Moran, he thought the restroom was empty, and while reaching for toilet paper, he saw movement through the hole, which was located about four to five inches directly above the toilet paper dispenser, and inadvertently observed an unidentified individual masturbating for "maybe ten seconds ... [p]ossibly more or less." According to Moran, his line-of-sight angle permitted him to inadvertently observe the individual through the hole without "stick[ing his] eye down [to] look through the hole."

[¶ 22] Although Hougum characterizes Moran's intrusion as a "deliberate visual inspection" and an "intentional and direct observation," he has cited no evidence in the record to support those conclusory statements and dispute Moran's version of the observation. A party resisting summary judgment must present competent admissible evidence by affidavit or other comparable means to raise a disputed issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by citing the page and line in depositions or other documents containing testimony or evidence raising an issue of material fact. *Miller,* 1997 ND 231, ¶ 15, 571 N.W.2d 358; *Kummer,* 516 N.W.2d at 297.

[¶ 23] Moran's visual intrusion was limited in time and scope, and it was not recorded, nor seen by others. As a Sears employee, he was not required to ignore the possibility of shoplifting or vandalism in his employer's public restroom, which he believed was unoccupied, and his relatively brief visual intrusion was consistent with his work responsibilities. *See Elmore,* 341 S.E.2d at 906–07 (recognizing store's interest in crime-free restroom); *Lewis,* 339 N.W.2d at 859 (right of privacy is not absolute). This is not a case involving the use of hidden surveillance devices to record private matters in a restroom, nor does it involve a planned or continued pattern of observation of private matters in a restroom. *See Harkey,* 346 N.W.2d at 76; *Kjerstad,* 517 N.W.2d at 421–22.

[¶ 24] Under the circumstances presented in this record, we decline to elevate the actions by Moran and Sears in this public restroom to an intentional intrusion upon Hougum's interest in seclusion by a method which is objectionable to a reasonable person. Issues about intent and the reasonable person standard are ordinarily questions of fact, *see Hecker v. Stark Cty. Soc. Serv. Bd.,* 527 N.W.2d 226, 229 (N.D.1994), *Kirton v. Williams Elec. Coop., Inc.,* 265 N.W.2d 702, 706 (N.D.1978), but they become questions of law if reasonable persons can draw only one conclusion from the evidence. *See Hanson,* 1997 ND 230, ¶ 11, 571 N.W.2d 363. We hold, as a matter of law, reasonable persons could only conclude the manner and purpose of the intrusion by Moran and Sears was not an intentional intrusion upon seclusion by a method which was objectionable to a reasonable person. We therefore conclude summary judgment was proper on Hougum's invasion of privacy claim.

### B

[¶ 25] Hougum argues the trial court erred in granting summary judgment on his claim for intentional infliction of emotional distress against Moran and Sears.[2]

2. On appeal Hougum has raised no issues regarding dismissal of this claim against VMH.

[¶ 26] In *Muchow v. Lindblad,* 435 N.W.2d 918, 923–25 (N.D.1989), we recognized a tort cause of action for intentional infliction of emotional distress under Restatement (Second) of Torts § 46 (1965), which requires proof of (1) extreme and outrageous conduct that is (2) intentional or reckless and causes (3) severe emotional distress. Under *Muchow* and § 46, a defendant's conduct must be intentional or reckless and must be extreme and outrageous. The "extreme and outrageous" threshold is narrowly limited to conduct that exceeds "all possible bounds of decency" and which would arouse resentment against the actor and lead to an exclamation of " 'outrageous' " by an average member of the community. *Muchow,* 435 N.W.2d at 924. The court must initially decide whether a defendant's conduct reasonably may be regarded as "extreme and outrageous." *Id.; Security Nat'l Bank of Edgeley v. Wald,* 536 N.W.2d 924, 927 (N.D. 1995).

[¶ 27] We have already concluded Hougum failed to raise a disputed factual issue about whether the conduct of Moran and Sears was intentional. Viewed in the light most favorable to Hougum, we also conclude reasonable persons could not find the conduct of Moran and Sears constituted extreme and outrageous conduct. We conclude summary judgment was proper on Hougum's intentional infliction of emotional distress claim.

C

[¶ 28] Hougum contends the trial court erred in granting summary judgment on his claim for negligent infliction of emotional distress against Moran and Sears.[3]

[¶ 29] A plaintiff claiming negligent infliction of emotional distress must show "bodily harm." *Muchow,* 435 N.W.2d at 921 (citing Restatement (Second) of Torts § 436A, Comment c (1965)). In *Muchow,* 435 N.W.2d at 921, we explained:

"[B]odily harm essential to sustain a claim for relief for negligent infliction of emotional distress is defined in Restatement 2d Torts § 15 (1965) as 'any physical impairment of the condition of another's body, or physical pain or illness.' Bodily harm may be caused not only by impact or trauma, but also by emotional stress.... Comment c. of the Restatement 2d Torts § 436A (1965) further explains the nature of the requisite 'bodily harm':

" 'The rule stated in this Section applies to all forms of emotional disturbance, including temporary fright, nervous shock, nausea, grief, rage, and humiliation. The fact that these are accompanied by transitory, non-recurring physical phenomena, harmless in themselves, such as dizziness, vomiting, and the like, does not make the actor liable where such phenomena are in themselves inconsequential and do not amount to any substantial bodily harm. On the other hand, long continued nausea or headaches may amount to physical illness, which is bodily harm; and even long continued mental disturbance, as for example in the case of repeated hysterical attacks, or mental aberration, may be classified by the courts as illness, notwithstanding their mental character. This becomes a medical or psychiatric problem, rather than one of law.' "

[¶ 30] We do not believe the evidence cited by Hougum raises a reasonable inference of "bodily harm" necessary for a claim for negligent infliction of emotional distress. Hougum has cited no evidence to show his alleged shock, embarrassment, and depression was anything other than transitory phenomena. We hold, as a matter of law, Hougum has failed to raise a genuine issue of material fact he suffered "bodily harm." We affirm the summary judgment dismissing Hougum's claims against Moran and Sears.

IV

VMH

A

[¶ 31] Hougum argues VMH breached a contractual obligation with him. In North Dakota, the general rule is employment having no specified term may be terminated by either party upon notice to the other. N.D.C.C. § 34–03–01. Employment without a definite term is presumed to be at-will, and an employer may terminate an at-

3. On appeal Hougum has raised no issues re-

garding dismissal of this claim against VMH.

will employee with or without cause. *Bykonen v. United Hosp.*, 479 N.W.2d 140, 141 (N.D.1992). By contract, the parties can overcome the at-will presumption and create enforceable employment rights. *Id.*

[¶ 32] VMH issued Hougum an employee handbook that explicitly said it was not to be construed as an employment contract. *See Bailey v. Perkins Restaurants, Inc.*, 398 N.W.2d 120, 123 (N.D.1986) (clear and conspicuous disclaimer preserves presumption of employment at-will). Hougum concedes his employment relationship with VMH was not for a definite period of time. He argues, however, a "letter of call" from the ALC Church Council created a contractual obligation between him and VMH and rebutted the presumption of his at-will employment status.

[¶ 33] The "letter of call" informed Hougum about his employment at VMH and said "[t]he American Lutheran Church or its agency also reserves the right to terminate your employment with reasonable notice should a change in program or other justifiable reasons require it." We reject Hougum's argument the "letter of call" created a contractual relationship between him and VMH. The "letter of call" refers to Hougum's status as member of the ministry of the American Lutheran Church and not to his employment status at VMH. The "letter of call" was not issued, or signed, by VMH, and it refers to VMH as the third party who had hired Hougum. We agree with the trial court's conclusion the "letter of call" was simply a calling to be a chaplain and did not rebut the presumption of Hougum's at-will employment. We hold the trial court did not err in dismissing Hougum's breach of contract claim against VMH.

**B**

[¶ 34] Hougum also contends the trial court erred in dismissing his claim against VMH under the North Dakota Human Rights Act, N.D.C.C. Ch. 14–02.4.

**1**

[¶ 35] The Human Rights Act outlines exceptions to the employment at-will doctrine. *Fatland v. Quaker State Corp.*, 62 F.3d 1070, 1072 (8th Cir.1995) (applying North Dakota law). The act was adopted "to prevent and eliminate discrimination in employment relations ...," N.D.C.C. § 14–02.4–01, and prohibits an employer from discharging an employee on the basis of "sex." N.D.C.C. § 14–02.4–03. In *Miller*, 1997 ND 231, ¶ 13, 571 N.W.2d 358, we recently said a prima facie case for "sex" discrimination under the Act requires the plaintiff to show membership in a protected class and adverse treatment by the employer because of the protected status.

[¶ 36] Hougum asserts "sex" should be construed to mean sexual preference or orientation and argues VMH violated the Act by discharging him because it believed he was homosexual. Hougum contends he is not homosexual, but argues VMH's concerns about the "'conservative'" attitude of many of its residents "makes clear that [VMH] considered [him] to be a homosexual and, further, that homosexuality would not be tolerated."

[¶ 37] We need not decide whether "sex" means sexual preference or orientation under the Act, because, assuming it does, Hougum has presented no evidence, other than his unsupported conclusory assertion, VMH held any beliefs regarding Hougum's sexual preference or orientation.[4] A party resisting summary judgment may not simply rely upon pleadings or unsupported, conclusory allegations. *Miller*, 1997 ND 231, ¶ 15, 571 N.W.2d 358. We conclude Hougum failed to present a prima facie case for "sex" discrimination.

**2**

[¶ 38] Hougum also argues he was terminated for participating in "lawful activity off the employer's premises during non-working hours" in violation of N.D.C.C. § 14–02.4–03. Hougum argues his conduct was lawful because the enclosed restroom stall was a place of temporary privacy and not a "public place" under N.D.C.C. § 12.1–20–12.1, which prohibits masturbating in a public place. Relying on the deposition testi-

---

4. Because Hougum has failed to present a prima facie case for sex discrimination, it is also not necessary to examine Hougum's standing to claim protection as a member of a class of persons while simultaneously denying he is a member of that class.

mony of a VMH manager that he was terminated because of the Sears incident, he asserts there are disputed factual issues about whether he was terminated for lawful activity off the employer's premises during nonworking hours. We agree.

[¶ 39] Section 14–02.4–03, N.D.C.C., prohibits an employer from discharging an employee "for participation in lawful activity off the employer's premises during nonworking hours which is not in direct conflict with the essential business-related interests of the employer." Section 14–02.4–08, N.D.C.C., states it is not

"a discriminatory practice for an employer ... to discharge an individual from a position on the basis of that individual's participation in a lawful activity that is off the employer's premises and that takes place during nonworking hours and which is not in direct conflict with the essential business-related interests of the employer, if that participation is contrary to a bona fide occupational qualification that reasonably and rationally relates to employment activities and the responsibilities of a particular employee or group of employees, rather than to all employees of that employer."

[¶ 40] The broad provisions precluding employer discrimination for lawful activity off the employer's premises during non-working hours were initially enacted in 1991 to expand the law prohibiting employment discrimination and preclude employers from inquiring into an employee's non-work conduct, including an employee's weight and smoking, marital, or sexual habits. 1991 N.D.Sess. Laws Ch. 142, February 4, 1991 Testimony of John Olson on S.B. No. 2498 before Senate Committee on Industry, Business and Labor. The 1991 amendments included the language allowing an employer to discharge an employee for lawful activity if the activity was contrary to a bona fide occupational qualification that reasonably and rationally related to employment activities and the responsibilities of a particular employee. *Id.*

[¶ 41] In 1993, the Legislature enacted language prohibiting discrimination for lawful activity "which is not in direct conflict with the essential business-related interests of the employer" to clarify possible conflicts between the protected status of lawful activity off the employer's premises and the employment-at-will doctrine. *See* 1993 N.D. Sess. Laws Ch. 140, Prepared Testimony of Robert Feder on S.B. No. 2367. The 1993 amendments afford a compromise between the employment at-will doctrine and the protected status of lawful activity off the employer's premises to "provide an employer with some assurance that the employee's conduct is not deleterious to the well-being of the employer's mission." *Id. See also Fatland,* 62 F.3d at 1073, n. 2 (affirming summary judgment for employer under 1991 law because prohibiting employees from operating off-hours business that conflicted with employer's business was bona fide occupational qualification that was reasonably and rationally related to employment activities).

[¶ 42] According to Hougum, he withdrew his guilty plea to the disorderly conduct charge on January 6, 1995, and the charge was ultimately dismissed with prejudice on January 25, 1995. When VMH terminated Hougum on January 19, 1995, the charge of disorderly conduct was pending against him. *See* N.D.C.C. § 12.1–31–01. The trial court ruled Hougum's conduct constituted unlawful indecent exposure under N.D.C.C. § 12.1–20–12.1, which prohibits "[m]asturbating in a public place," and VMH's discharge of Hougum therefore did not violate the Human Rights Act.

[¶ 43] As commonly used, the word "lawful" means authorized by law and not contrary to, nor forbidden by law. *See* Black's Law Dictionary, Fifth Edition at 797 (1979). Here, Hougum's conduct occurred in an enclosed stall of a public restroom. Section 12.1–20–12.1, N.D.C.C., prohibits masturbating in a "public place." [5] Courts generally have said activities conducted in an enclosed stall in a public restroom do not occur in a public place. *Ward v. State,* 636 So.2d 68, 69 (Fla.App.1994); *Chubb v. State,* 640 N.E.2d

---

**5.** Section 12.1–20–12.1, N.D.C.C., was enacted in 1979 N.D. Sess. Laws Ch. 179, § 1, to specifically criminalize masturbation in a public place, rather than to require use of the disorderly conduct statute to criminalize that conduct. *See* March 7, 1979 Minutes of Senate Judiciary Committee regarding H.B. 1450. The legislative history does not help define "public place" for purposes of N.D.C.C. § 12.1–20–12.1.

44, 47 (Ind.1994). *See State v. Bryant,* 287 Minn. 205, 177 N.W.2d 800, 804 (1970) (surreptitious surveillance of defendant in enclosed stall of public restroom of store was unreasonable search). *Cf.* Annot., *Search and Seizure: Reasonable Expectation of Privacy in Public Restroom,* 74 A.L.R. 4th 508, § 8 (1989) (generally recognizing expectation of privacy in restroom stall with closed door), *Compare State v. Laymon,* 239 Neb. 80, 474 N.W.2d 458, 461 (1991) (evidence supported conviction for indecent exposure when defendant masturbated in public restroom in manner readily observable by public); *People v. Davis,* 164 Misc.2d 89, 624 N.Y.S.2d 353, 355 (1994) (allegation of acts in public view in public restroom established prima facie case defendant's acts occurred in public place).

[¶ 44] In criminal prosecutions for indecent exposure, other courts have defined a public place as a place where the actor might reasonably expect conduct to be seen by others. *United States v. Doe,* 884 F.Supp. 78, 82 (E.D.N.Y.1995); *State v. Whitaker,* 164 Ariz. 359, 793 P.2d 116, 118–20 (1990); *Greene v. State,* 191 Ga.App. 149, 381 S.E.2d 310, 311 (1989); *People v. Baus,* 16 Ill.App.3d 136, 305 N.E.2d 592, 593 (1973); *Messina v. State,* 212 Md. 602, 130 A.2d 578, 579–80 (1957). In *Whitaker,* 793 P.2d at 119, citing *Greene,* 381 S.E.2d at 311, the court explained the determination of what constitutes a public place is a question of fact. Similarly, in *City of Bismarck v. Nassif,* 449 N.W.2d 789, 795–96 (N.D.1989), a disorderly conduct conviction for using "fighting words," we held there was sufficient evidence to support a jury verdict where the jury could have reasonably concluded bystanders in a public place heard the defendant make threatening statements from his private property.

[¶ 45] We decline to hold, as a matter of law, Hougum's conduct in the Sears restroom constituted either lawful or unlawful activity. Hougum has raised a disputed factual issue about whether his conduct was not forbidden by law and therefore may fit within the protected status of lawful activity off the employer's premises. Hougum also has raised a disputed factual issue about whether VMH terminated him because of the protected status, i.e. because of the Sears incident. VMH nevertheless has raised a claim Hougum's activity undermined his effectiveness

as a chaplain and therefore directly conflicted with its business-related interests. The potential conflicts raised by VMH are not the same type of business and economic conflicts of interest at stake in *Fatland,* 62 F.3d at 1072–73 (employee's off-hours fast lube business conflicted with business of employer's customers), and we decline to hold, as a matter of law, VMH is entitled to prevail on its claim Hougum's activity was in direct conflict with its essential business-related interests.

[¶ 46] We hold there are disputed factual issues under the Human Rights Act about whether Hougum was discharged for lawful activity off VMH's premises which was not in direct conflict with VMH's essential business related interests, or whether Hougum's actions were contrary to a bona fide occupational qualification that reasonably relates to his employment activities and responsibilities under N.D.C.C. § 14–02.4–08. *Compare Soentgen v. Quain & Ramstad Clinic, P.C.,* 467 N.W.2d 73, 81 (N.D.1991) (assuming alcoholism and drug addiction were handicaps under Human Rights Act, discharge of physician was based on bona fide occupational qualification reasonably necessary for a physician). We therefore reverse summary judgment for VMH on this claim, and we remand for further proceedings consistent with this opinion.

V

[¶ 47] We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

[¶ 48] MARING and MESCHKE, JJ., concur.

[¶ 49] JAMES H. O'KEEFE, Surrogate Judge, sitting in place of SANDSTROM, J., disqualified.

VANDE WALLE, Chief Justice, concurring & dissenting.

[¶ 50] I concur in parts I through IV B 1 of the majority opinion. I dissent to part IV B 2 of the majority opinion because I do not believe, as a matter of law, the Human Rights Act, Chapter 14–02.4, NDCC, is intended to protect as "lawful activity off the employer's premises during nonworking

hours" sexual activity, alone or with others, in a bathroom in a store in a shopping mall.

[¶ 51] James H. O'Keefe, Surrogate Judge.