LEWIS v DAYTON-HUDSON CORPORATION

Docket No. 64957. Submitted June 6, 1983, at Lansing.—Decided August 16, 1983.

Plaintiff, Kevin Lewis, an undercover police officer, brought an action in the Eaton Circuit Court against defendant, Dayton-Hudson Corporation. In his action plaintiff alleged invasion of privacy, false imprisonment and intentional infliction of emotional distress as a result of an incident which occurred in defendant's store when the defendant's security officer observed the plaintiff from an overhead observation area in a fitting room, discovered plaintiff's concealed firearm, and detained the plaintiff until police officers arrived. The trial court, Hudson E. Deming, J., granted the defendant's motion for summary judgment with respect to the invasion of privacy claim. The remaining two claims were voluntarily dismissed with prejudice. Plaintiff appeals from the order and judgment dismissing his invasion of privacy claim. *Held:*

1. Under the circumstances of this case, the conduct of defendant's security officer did not constitute an unwarranted invasion of plaintiff's privacy.

2. The defendant placed the plaintiff on notice that he was subject to the type of observation which was conducted by defendant's security officer when it placed a sticker on the mirrors in the fitting room to inform customers "This area under surveillance by Hudson's personnel". Whatever expectation of privacy plaintiff may have had in the absence of such signs was removed by the placement of the signs in the fitting room. The security guard's conduct was not objectionable. After plaintiff placed his gun on the chair in the fitting room, the fact that plaintiff possessed such a weapon was no longer a private matter.

3. Where, as here, signs are clearly posted notifying custom-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 62 Am Jur 2d, Privacy § 1.
[3] 62 Am Jur 2d, Privacy § 42.
  68 Am Jur 2d, Searches and Seizures §§ 13, 21, 46.
  Validity, under Federal Constitution, of consent to search—Supreme Court cases. 36 L Ed 2d 1143.

ers that they are under surveillance while inside the fitting room of a retail establishment, the "modicum of privacy" the fitting room appeared to afford did not include freedom from overhead observation by a store security guard who was of the same sex as the customer.

Affirmed.

1. PRIVACY — TORTS — INVASION OF PRIVACY.

The tort of invasion of privacy has been divided into four separate types of claims: (1) intrusion upon plaintiff's seclusion or solitude, or into his private affairs, (2) public disclosure of embarrassing private facts about the plaintiff, (3) publicity which places the plaintiff in a false light in the public eye, and (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness.

2. PRIVACY — TORTS — INVASION OF PRIVACY.

The type of invasion of privacy claim involving intrusion upon plaintiff's seclusion or solitude or into his private affairs is analogous to a trespass; however, it is unnecessary to show physical invasion onto the plaintiff's property since eavesdropping upon private conversations by wiretaps or spying into windows of a private home have been held to be actionable.

3. PRIVACY — TORTS — INVASION OF PRIVACY — FITTING ROOMS — OVERHEAD OBSERVATIONS.

The "modicum of privacy" a retail establishment's fitting room appears to afford to the establishment's customers does not include freedom from overhead observation by a store security guard who is of the same sex as the customer where signs are clearly posted notifying the customers that they are under surveillance while inside the fitting room.

*James R. Pearson,* for plaintiff.

*Smith, Haughey, Rice & Roegge* (by *Lance R. Mather),* for defendant on appeal.

Before: DANHOF, C.J., and ALLEN and K. N. HANSEN,* JJ.

DANHOF, C.J. Plaintiff appeals as of right from

* Circuit judge, sitting on the Court of Appeals by assignment.

an order of the trial court dismissing his invasion of privacy claim pursuant to GCR 1963, 117.2(3).

The pertinent facts involved in this case are not in dispute. Plaintiff was shopping in the men's clothing department of one of defendant's stores. Plaintiff was employed as an undercover police officer and was required to carry a firearm concealed on his person at all times. While he was shopping at defendant's store, one of defendant's security officers became suspicious that plaintiff might be a shoplifter. When plaintiff took some clothing into one of the store's fitting rooms, the security officer followed him.

Two mirrors were located in the fitting rooms. On each mirror was a sticker which informed customers: "This area under surveillance by Hudson's personnel". The fitting rooms were equipped with louvred doors which did not lock and which did not extend all the way to the floor. In addition, there was a grille located in the ceiling from which persons in the fitting rooms could be observed. Access to the observation area was by a ladder located in a storeroom behind the fitting rooms.

When plaintiff entered the fitting room, the security officer watched him from the overhead observation area where he saw plaintiff remove his firearm and place it on a chair. The security officer contacted another employee who called the police.

By the time the police arrived, plaintiff had returned to the main area of the store where a police officer pointed a gun at plaintiff and told him not to move. The officer did not at first accept plaintiff's explanation that he was an undercover police officer. It was not until other police officers arrived that plaintiff was removed to a non-public area of the store where his identification was examined and he was permitted to leave.

Plaintiff commenced this action alleging invasion of privacy, false imprisonment and intentional infliction of emotional distress. The trial court granted defendant's motion for summary judgment with respect to the invasion of privacy claim. The remaining two claims were voluntarily dismissed with prejudice.

The tort of invasion of privacy has been divided into four separate types of claims. See Prosser, Torts (4th ed), § 117, p 804. The four are: (1) intrusion upon plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and, (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness. *Beaumont v Brown,* 401 Mich 80, 95; 257 NW2d 522 (1977).

The only form of these four which is involved in this case is intrusion upon plaintiff's seclusion. It has been held that this type of invasion of privacy is analogous to a trespass. *McCormick v Haley,* 37 Ohio App 2d 73; 307 NE2d 34 (1973). However, it is unnecessary to show physical invasion onto a person's property. Eavesdropping upon private conversations by wiretaps or spying into windows of a private home have been held to be actionable. *Souder v Pendleton Detectives, Inc,* 88 So 2d 716 (La App, 1956); *Roach v Harper,* 143 W Va 869; 105 SE2d 564 (1958).

In Michigan, this tort has been discussed in *Earp v Detroit,* 16 Mich App 271; 167 NW2d 841 (1969). In *Earp, supra,* plaintiff claimed that defendant, his employer, intruded upon his seclusion when it sought information from the police about plaintiff which led to plaintiff's discharge. The Court held that in order to maintain an action for

this type of tort, plaintiff must show that there was: (1) an intrusion by defendant; (2) into a matter which plaintiff has a right to keep private; (3) by the use of a method which is objectionable to the reasonable person. *Earp, supra,* pp 276-277. See also *Bradshaw v Michigan National Bank,* 39 Mich App 354, 356; 197 NW2d 531 (1972); *DeMay v Roberts,* 46 Mich 160; 9 NW 146 (1881). Although the Court in *Earp, supra,* recognized the existence of this form of tort, it noted that the right to be free from intrusion is not absolute. It held that such a right does not extend so far as to subvert those rights which spring from social conditions, including business relations. *Earp, supra,* p 276.

Turning to the facts of the present case, we are in agreement with plaintiff that there are many circumstances in which conduct of the kind defendant was involved in would constitute an unwarranted invasion of privacy. For example, in *People v Abate,* 105 Mich App 274, 278; 306 NW2d 476 (1981), in a criminal prosecution brought pursuant to MCL 750.539d; MSA 28.807(4), the Court held that defendant's installation of a two-way mirror over the women's restroom of his roller skating rink constituted an unwarranted intrusion into an area where defendant's customers had a legitimate expectation of privacy. See also *People v Dezek,* 107 Mich App 78, 84; 308 NW2d 652 (1981). However, in spite of the foregoing, we do not believe that under the circumstances of this case the conduct of defendant's security officer constituted an unwarranted invasion of plaintiff's privacy.

It has been recognized that retailers in this country face a shoplifting epidemic of dynamic proportions. See *Bonkowski v Arlan's Dep't Store,* 383 Mich 90, 103-104; 174 NW2d 765 (1970); *Bruce v Meijers Supermarkets, Inc,* 34 Mich App 352,

355; 191 NW2d 132 (1971). Fitting rooms which retailers provide for their customers are particularly suited to concealment of stolen property. In *In re Deborah C,* 30 Cal 3d 125; 177 Cal Rptr 852; 635 P2d 446 (1981), the California Supreme Court was faced with a similar claim in the context of a criminal case involving a claim of illegal search and seizure. The court held that it was not unreasonable for store security personnel to view patrons in fitting rooms from an adjacent corridor through which customers and sales clerks frequently passed. The court noted that there were large gaps above and below the fitting room doors which provided an obvious view into each fitting room. In holding that no reasonable expectation of privacy existed, the court stated the following:

"Though designed perhaps to give minimal protection to modesty, the doors hardly could promote any reasonable feeling that all actions and objects behind them were insulated from public observation.

\* \* \*

"One who uses a dressing room is entitled to the modicum of privacy it appears to afford." 30 Cal 3d 137, 139; 177 Cal Rptr 858, 859; 635 P2d 452, 453.

Although it is conceded that the nature of the surveillance involved in this case was more intrusive than that which was involved in *In re Deborah C, supra,* it must be kept in mind that, unlike the situation presented in that case and in *People v Abate, supra,* in the present case signs were posted in the fitting rooms informing customers that the area was under surveillance. Although plaintiff claims that he cannot recall whether he saw the signs, he does not dispute defendant's

claim that the signs were prominently located and plain to see.

The only case which we were able to locate which discussed the expectation of privacy a store customer is legitimately entitled to where such signs are located in a fitting room was *Gillett v State*, 588 SW2d 361 (Tex Crim App, 1979). *Gillett, supra,* involved a criminal prosecution for shoplifting. Defendant was observed entering a fitting room with a sweater. There were signs posted on the mirror of the fitting room similar to those involved in this case. A store security guard was able to observe defendant place the sweater in her purse by getting down on her hands and knees and looking under the door. In rejecting defendant's claim that the intrusion was unreasonable, the court stated the following:

"What people seek to preserve as private, even areas accessible to the public, may be constitutionally protected by the Fourth Amendment. *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967). Further, areas such as public toilet stalls are private to the extent they are offered to the public for private, although temporary, use. *Katz v United States, supra; Britt v Superior Court,* 58 Cal 2d 469; 24 Cal Rptr 849; 374 P2d 817 (1962); *State v Bryant,* 287 Minn 205; 177 NW2d 800 (1970). Such constitutional protection, however, extends only to the limits that the design, purpose and plan of the public facility affords so that, when the design is such that there is no right to expect absolute privacy, there can be no invasion of privacy. *Buchanan v State,* 471 SW2d 401 (Tex Crim App, 1971), *cert den* 405 US 930; 92 S Ct 984; 30 L Ed 2d 804 (1972).

"In the present case, the posted sign on the mirror which would under nearly all circumstances be looked at by female occupants of a fitting room was notice that one could not expect privacy. This room was for use by the public on conditions established by the business. If appellant did not want to use the fitting room under

the posted conditions, she was not compelled to do so."
588 SW2d 363.[1]

We agree with *Gillett, supra,* that by posting
these signs defendant placed plaintiff on notice
that he was subject to the type of observation
which was conducted by defendant's employee.
Whatever expectation of privacy he may have had
in the absence of such signs was removed by the
placement of the signs in the fitting room. There-
fore, we hold that the conduct of defendant's secu-
rity guard was not objectionable. When plaintiff
placed the gun on the chair inside the fitting room,
the fact that he possessed such a weapon was no
longer a private matter. *Earp, supra.* Plaintiff has
no claim for this type of invasion of privacy.

We do not mean to suggest by the foregoing that
by merely placing signs such as those involved
here in fitting rooms merchants are absolutely
immune from claims of invasion of privacy. On the
contrary, had the observation in this case been
conducted by persons not authorized to perform
such surveillance, or by a member of the opposite
sex, our decision might well have been different.
We may also have reached a different conclusion if
defendant's security guard, rather than simply
relaying this information to the police, had uti-
lized the information in an objectionable fashion.
However, we hold that where, as here, signs are
clearly posted notifying customers that they are
under surveillance while inside the fitting room of
a retail establishment, the "modicum of privacy"

---

[1] The conclusion reached in *Gillett, supra,* is consistent with federal
court decisions holding that a person's expectation of privacy is
diminished significantly where signs posted at airports notify passen-
gers that they and their baggage are subject to search. See *United
States v Edwards,* 498 F2d 496 (CA 2, 1974). See also *Jensen v
Pontiac,* 113 Mich App 341; 317 NW2d 619 (1982).

the fitting room appears to afford does not include freedom from overhead observation by a store security guard who is of the same sex as the customer. *In re Deborah C, supra.*

Our disposition of the foregoing renders moot plaintiff's remaining claim.

The decision of the trial court is affirmed. Costs to appellee.