*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOHNNY ZAITONA, NANCY ZAITONA, JANE DOE, and JOHN DOE,

Plaintiffs-Appellants,

v

JOHN LEONOWICZ and SUSAN LEONOWICZ,

Defendants-Appellees.

UNPUBLISHED
April 08, 2026
1:26 PM

No. 370804
Oakland Circuit Court
LC No. 2024-204685-CZ

Before: KOROBKIN, P.J., and YOUNG and BAZZI, JJ.

PER CURIAM.

In this tort action, plaintiffs, Johnny Zaitona and Nancy Zaitona, and their minor grandchildren, Jane Doe and John Doe, appeal by right the trial court's order granting summary disposition under MCR 2.116(C)(10) in favor of defendants, John Leonowicz and Susan Leonowicz. We reverse in part and remand for further proceedings.

## I. FACTUAL BACKGROUND

This case arises out of a dispute between property owners (the parties) over the placement of surveillance security cameras on defendants' property. The parties, whose lakefront properties are adjacent, have an acrimonious relationship. Defendants lived at their property for decades before plaintiffs bought the lot next door, constructed a house, and moved into it in 2017. Plaintiffs' backyard, which faces the private lake, has a small private sandy beach on the water, and a boat dock. Plaintiffs and their relatives and friends use the beach and the dock while in their bathing suits. Defendants' home, which has multiple stories, is set farther back on the lot than plaintiff's home. A privacy fence is between the two properties.

On their property, defendants installed 16 cameras, at least seven of which are directed at plaintiffs' property, including plaintiffs' backyard and house. At least one camera is directed toward plaintiffs' bedroom window. The cameras record around-the-clock, and defendants can play back the recordings. The cameras have infrared night-vision and a 62x zoom function. Defendants can monitor video from all 16 cameras at once. Defendants had some cameras installed in 2012 or 2013, but most were installed in June 2018.

-1-

The parties have a prior history of litigation. In 2019, defendants brought a nuisance action against plaintiffs regarding plaintiffs' driveway, boat docks, and alleged dumping of sand and soil into the lake. The jury found plaintiffs liable in part, but the trial court granted plaintiffs' motion for a judgment notwithstanding the verdict on the basis of jury instructions. The court granted remittitur and a conditional new trial. This Court ruled the trial court did not err by addressing legal errors with the instructions, and defendants failed to establish plaintiffs' docks unreasonably interfered with defendants' use and enjoyment of their property or caused substantial harm and affirmed. *Leonowicz v Zaitona*, unpublished per curiam opinion of the Court of Appeals, issued December 12, 2024 (Docket No. 366228).

In 2022, plaintiffs filed a trespass action against defendants regarding a mesh and burlap fence installed near the parties' property line. Plaintiffs eventually filed a second amended complaint, adding invasion of privacy as a result of defendants' surveillance cameras. The parties conducted discovery, which included information regarding the cameras' specifications and a download of some images and videos recorded by defendants' system. The parties dispute, however, whether complete discovery occurred. Although the trial court ordered defendants to produce all electronically stored information from their surveillance equipment, defendants did not provide those materials by the date specified in the order. Plaintiffs then moved for defendants to show cause for failing to comply with the discovery order.

Defendants permitted plaintiffs' expert, forensic examiner Mark St. Peter, to go to their home on one occasion and download stored files. In the 10 hours defendants permitted him to access the system, St. Peter copied only about 4,800 recordings, a small fraction of the hundreds of thousands of images retained by defendants.

The court then decided plaintiffs' invasion of privacy claim was improperly before it because plaintiffs failed to seek leave to amend their complaint. The court dismissed the privacy claim and ruled plaintiffs' motion for show cause regarding discovery was moot given the dismissal of that claim. The parties settled the remaining claims involving trespass. The court's order of dismissal noted the parties had settled the trespass issues. The order dismissed the invasion of privacy count without prejudice.

Two months after the dismissal, in December 2023, plaintiffs filed the instant action, alleging invasion of privacy—intrusion upon seclusion (Count I); violation of the statute regarding the placement of a recording device in a private place, MCL 750.539d (Count II); and intentional infliction of emotional distress (Count III). Plaintiffs attached an affidavit from private investigator Ryan Robison, who noted that defendants' cameras had a direct line of sight into windows in plaintiffs' residence. Robison added that the camera specifications of zoom and infrared capacity would make "lewd intrusion readily available" to defendants. Further, the cameras would be able to provide high-resolution images of plaintiffs and their visitors, even with very minimal lighting from plaintiffs' home.

Plaintiffs also provided an affidavit from St. Peter, who indicated many of defendants' videos depicted young children in plaintiffs' yard. The camera recording those images was mounted on the second or third story of defendants' home and pointed over the privacy fence, solely at plaintiffs' backyard. Because the videos are high-definition, defendants can zoom in to

see the children's faces and other details. He added that defendants' camera pointing at plaintiffs' home captures video if plaintiffs opening their window shades or using lighting at night.

In deposition, Susan Leonowicz acknowledged that the cameras film plaintiffs' whole backyard. She agreed a camera pointed toward plaintiffs' window but noted that plaintiffs had window blinds. John Leonowicz was asked in deposition whether he could have the camera contractor set a different angle on the camera pointing to plaintiffs' bedroom; he responded he had not been asked to do so. The record does not reflect whether the cameras have been realigned.

In lieu of an answer to the complaint, defendants moved for summary disposition under MCR 2.116(C)(7), (8), and (10). Defendants argued that plaintiffs' claims were time-barred because the statute of limitations for an invasion of privacy claim is three years, but plaintiffs filed the complaint five years after the installation of the cameras. They asserted plaintiffs' claim for intentional infliction of emotional distress likewise was beyond the statute of limitations.

Defendants also contended plaintiffs had not established private subject matter because the activities they undertake on their sandy beach can be seen by neighbors. Defendants asserted that their cameras could not film inside of plaintiffs' home, and cited the report from plaintiffs' expert St. Peter, who did not find evidence of such a video. Defendants referenced the prior litigation, where the installer of the cameras, Gregory Pickard, indicated the cameras could not film inside the home. They also relied on a posted sign, which alerted neighbors that the perimeter of their home is under surveillance. They added it was not outrageous for them to maintain an outdoor security system.

Plaintiffs responded that the statute of limitations does not bar their claims. Plaintiffs argued defendants' filming within three years of the complaint supported the timeliness of their claims. Further, defendants' fraudulent concealment tolled the statute of limitations because defendants initially informed plaintiffs the cameras were neither working nor recording, and plaintiffs did not learn that was false until September 2022. Plaintiffs' claim of intentional infliction of emotional distress accrued when they realized they were under constant electronic surveillance.

Plaintiffs asserted their private activities in their backyard are a private subject matter, and the obtaining of information by high-powered surveillance equipment is objectionable, particularly because the cameras can film into their home. They challenged defendants' contention that the surveillance cameras, some of which point at plaintiffs' property, were solely related to defendants' home security. They noted summary disposition was premature because further discovery could yield factual support for their position. Plaintiffs have not made their backyard activities public, and they have a right to be safe from hostile intrusion. The question whether an intrusion is objectionable is appropriate for the trier of fact, and defendants admitted some cameras pointed at plaintiffs' home, so the claim for intentional infliction of emotional distress is valid.

Plaintiffs provided 29 photographs and videos, out of over 200,000, from defendants' surveillance system. No images or videos showed the inside of plaintiffs' home. In its order, the trial court confirmed that, to establish an invasion of privacy claim, plaintiffs first must establish a secret and private subject matter. Regarding plaintiffs' claim of common-law invasion of privacy, the court ruled plaintiffs provided no legal authority to support a reasonable expectation

-3-

of privacy in activities outside their home. The court stated plaintiffs' grandchildren playing on the beach in their bathing suits would have been visible to anyone with lakefront property. Further, the court cited *People v Custer (On Remand)*, 248 Mich App 552, 562; 640 NW2d 576 (2001) (ruling no expectation of privacy inside a home exists when the home's blinds are open), and *Lewis v Dayton Hudson Corp*, 128 Mich App 165; 339 NW2d 857 (1983) (holding no reasonable expectation of privacy exists inside a retail store's fitting room that is under surveillance).

The court further explained:

> Plaintiffs provide no authority to support they have a reasonable expectation of privacy in activities done outside of their home. Similarly, Plaintiffs present no evidence except the statements of one expert to suggest Defendants' cameras can film inside of Plaintiffs' windows. Plaintiffs did not attach photographs or videos that show the inside of their home, despite their expert allegedly viewing the Defendants' stored videos. Plaintiffs' expert was given 10 hours of access to download the entirety of the recordings captured by Defendants' surveillance system and found absolutely no evidence of any recording of the inside of Plaintiffs' home.

The court likewise disposed of plaintiffs' statutory claim under MCR 750.539d, unlawful eavesdropping in a private place, ruling that plaintiffs provided no evidence that defendants had recorded private subject matter. The court concluded plaintiffs failed to provide evidence of a secret and private subject matter, and dismissed their invasion of privacy claims, Counts I and II of their complaint.

As to plaintiffs' claim of intentional infliction of emotional distress, the court stated it must determine whether defendants' conduct was outrageous. The court found the conduct did not meet the standard, reasoning:

> There is nothing outrageous about having an outdoor surveillance system. Again, Plaintiffs have not provided any evidence whatsoever to suggest Defendants recorded video footage of the inside of their home. Their expert alleges Defendants' cameras have this capability and Defendants' expert testified the cameras do not have this capability. Normally, disagreeing experts would create a triable fact issue; however, Plaintiff's expert had access to the recordings saved by Defendants' security system and did not find one photo or video of activity from inside Plaintiffs' home. Plaintiffs did not attach any photos or videos showing the inside of their home taken by Defendants' cameras. Their claims are unsupported, and Defendants' Motion is granted in its entirety.

Plaintiffs moved for reconsideration, which the trial court denied.

## II. STANDARDS OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition under a de novo standard. *Yellow Tail Ventures, Inc v City of Berkley*, 344 Mich App 689, 699; 1 NW3d 860, 866 (2022).

-4-

MCR 2.116(C)(7) provides that summary disposition may be brought on the basis of the statute of limitations. The Court considers the documentary evidence submitted by the parties and accepts the complaint's contents as true unless contradicted by the other documents. *Soave v Dep't of Treasury*, 349 Mich App 516, 523; 28 NW3d 407 (2023). Whether a claim is barred by the statute of limitations and the application of equitable tolling are questions of law, subject to de novo review. *James v Alberts*, 464 Mich 12, 14; 626 NW2d 158 (2001).

Summary disposition under MCR 2.116(C)(8) is appropriately granted "when the opposing party has failed to state a claim upon which relief may be granted." *Bodnar v St John Providence, Inc*, 327 Mich App 203, 212; 933 NW2d 363 (2019). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of a complaint on the basis of the pleadings alone. All well-pleaded factual allegations are to be accepted as true and are to be construed in the light most favorable to the nonmoving party." *Id*.

A motion for summary disposition under MCR 2.116(C)(10) tests the complaint's factual sufficiency. *Charter Twp of Pittsfield v Washtenaw Co Treasurer*, 338 Mich App 440, 449; 980 NW2d 119 (2021). The moving party must identify the issues where no genuine issue of material fact exists. *Id*. The court must examine the "affidavits, pleadings, depositions, admissions, and other evidence" submitted with the motion, and must do so in a light most favorable to the nonmoving party. *Id*. (quotation marks and citation omitted). The opposing party must provide evidence with particular facts to demonstrate that a genuine issue exists for trial. *Id*. Where the trial court considered materials outside the pleadings, including affidavits and photographic evidence, we apply the standard of review under MCR 2.116(C)(10). See *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012) (noting that review is proper under MCR 2.116(C)(10) where the trial court considered evidence outside the pleadings).

Finally, the court decides as a question of law whether the facts arise to extreme and outrageous conduct. *VanVorous v Burmeister*, 262 Mich App 467, 482-483; 687 NW2d 132 (2004), overruled in part on other grounds by *Odom v Wayne Co*, 482 Mich 459; 760 NW2d 217 (2008). This Court reviews questions of law under a de novo standard. *Patel v FisherBroyles, LLP*, 344 Mich App 264, 271; 1 NW3d 308 (2022). However, if the facts give rise to a difference of opinion regarding whether conduct is outrageous, then the matter is for the jury. *Lewis v LeGrow*, 258 Mich App 175, 197; 670 NW2d 675 (2003).

## III. LAW AND ANALYSIS

### A. THE STATUTE OF LIMITATIONS DOES NOT BAR PLAINTIFFS' CLAIMS

Defendants argue the statute of limitations bars plaintiffs' tort claims of invasion of privacy and intentional infliction of emotional distress. We disagree.

MCL 600.5805 "is commonly known as the general tort statute of limitations because it is a compilation of the limitations on the general tort remedies." *Miller-Davis Co v Ahrens Constr, Inc*, 489 Mich 355, 363; 802 NW2d 33 (2011) (cleaned up). Under MCL 600.5805(2), generally "the period of limitations is 3 years after the time of the death or injury for all actions to recover

damages for the death of a person or for injury to a person or property."[1]  The general three-year statutory limitations period applies to plaintiffs' claims of invasion of privacy, *Arent v Hatch*, 133 Mich App 700, 705; 349 NW2d 536 (1984), and intentional infliction of emotional distress, *Doe v Racette*, 313 Mich App 105, 107; 880 NW2d 332 (2015).  Where MCL 750.539d creates a civil cause of action for recording in a private place, *LeGrow*, 258 Mich App at 183, the three-year limitation time applies as well.

To determine when the three-year period began, MCL 600.5827 provides that, absent a specific exception, a "period of limitations runs from the time the claim accrues," and that "the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results."  In other words, a claim accrues when the wrong is done irrespective of the date damage occurs.  *Trentadue v Buckler Automatic Lawn Sprinkler*, 479 Mich 378, 388; 738 NW2d 664 (2007).  The wrong occurs "when the plaintiff is harmed rather than when the defendant acted."  *Boyle v GMC*, 468 Mich 226, 231 n 5; 661 NW2d 557 (2003).  In an invasion of privacy claim, "the wrong is done when the curtain of privacy is lifted."  *Arent*, 133 Mich App at 705 (cleaned up).

The parties dispute when the wrong was done.  Although defendants cite *Green v Lansing Automakers Fed Credit Union*, unpublished per curiam opinion of the Court of Appeals, issued August 13, 2019 (Docket No. 342373),[2] it is distinguishable.  Unlike the plaintiff in *Green*, the alleged invasions in this case had not ceased more than three years before plaintiffs filed the instant suit.  Plaintiffs claim the wrongs occurred during the summer of 2023, and they filed suit in December 2023, well within the three-year period.

Plaintiffs rely on *Twp of Fraser v Haney*, 509 Mich 18; 983 NW2d 309 (2022), where the township brought a nuisance abatement action against the defendant-landowners for the keeping of hogs on their property.[3]  The landowners moved for summary disposition on limitations grounds, but the trial court denied the motion, and this Court ultimately reversed.  *Id.* at 22-23.

Our Supreme Court examined when the wrong occurred.  The landowners asserted the suit was untimely because they had kept hogs on their property for more than a decade.  Our Supreme Court disagreed, ruling in part:

> The presence of the hogs on the property constitutes the wrong, and that wrong, along with the attendant harms it causes, is being committed as long as the piggery operates.[13]  For example, the fact that defendants had hogs on their property yesterday is not a wrong that occurred until yesterday, and any claims arising from

---

[1] MCL 600.5805 was amended in 2018 and the subsection containing the general limitations period was moved to subsection (2) from subsection (10).

[2] This Court is not bound by unpublished opinions but may consider them persuasive.  *Warren City Council v Fouts*, 345 Mich App 105, 112 n 1; 4 NW3d 79 (2022).

[3] Although *Fraser* is a nuisance matter, this Court has held that the tort of intrusion upon a plaintiff's seclusion is akin to a trespass, *Lewis v Dayton Hudson*, 128 Mich App at 168, so the reasoning in *Fraser* may be applied to this case.

harms due to the hogs' presence yesterday could not have accrued until then either. Therefore, because defendants had hogs on their property within the limitations period, claims accrued during that period and plaintiff's action is timely.

---

[13] Cf. *Woldson v Woodhead*, 159 Wash2d 215, 219; 149 P3d 361 (2006) (en banc) ("With most torts, a single isolated event begins the running of the statute of limitations . . . . A continuing trespass tort is different; the 'event' happens every day the trespass continues. Every moment, arguably, is a new tort. Thus, the statute of limitations does not prevent recovery for a continuing trespass that 'began' before the statutory period; instead the statute of limitations excludes recovery for any trespass occurring more than three years before the date of filing."); *Russo Farms, Inc v Vineland Bd of Ed*, 144 NJ 84, 102; 675 A2d 1077 (1996) ("'[I]f the nuisance or trespass is "temporary" or "continuous," a new cause of action arises day by day or injury by injury, with the result that the plaintiff in such a case can always recover for such damages as have accrued within the statutory period immediately prior to suit.' "), quoting Dobbs, Law of Remedies (1973), § 5.4, p 343.

[*Twp of Fraser*, 509 Mich at 25.]

Our Supreme Court then observed that this Court erroneously ruled the action would be timely only under the continuing-wrongs doctrine, which this state has abrogated. That doctrine permitted a plaintiff to reach back to recover for wrongs occurring before the limitations period. Even under that doctrine, however, a plaintiff had to demonstrate a wrong occurred within the relevant period. *Id.* at 27-28. The Court went on to note the effect of its opinion in *Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263; 696 NW2d 646 (2005), as amended on denial of reh 473 Mich 1205 (2005):

> When we abrogated the continuing-wrongs doctrine in *Garg*, we explained that the relevant statute of limitations there, MCL 600.5805, "requires a plaintiff to commence an action within three years of each adverse employment act by a defendant." After *Garg*, a plaintiff in Michigan may not revive stale claims even if the claims are part of a series of "continuing violations." But *Garg*, of course, did not operate to immunize future wrongful conduct. In other words, a plaintiff's failure to timely sue on the first violation in a series does not grant a defendant immunity to keep committing wrongful acts of the same nature. A plaintiff is free to bring a new action each time a defendant commits a new violation. *Garg* simply held that a plaintiff may not recover for injuries that fall outside the statutory period of limitations—regardless of how related those injuries are to timely claims—when the Legislature has not permitted such recovery by statute. But, importantly, *Garg* allowed the claim that accrued within the limitations period to go forward. [*Fraser*, 509 Mich at 25.]

The *Fraser* Court ruled that the defendants could not continue their zoning-ordinance violations simply because the plaintiff did not bring suit against the first zoning violation. The

Court explained that the abrogation of the continuing-wrongs doctrine was irrelevant because the plaintiff did not seek a remedy for violations outside the limitations period. *Id*. at 29.

Applying the reasoning in *Fraser* to this case, we conclude plaintiffs are not precluded from the instant suit simply because they did not bring it immediately upon the installation of the cameras. Under *Fraser*, defendants allegedly violate the law as long as they retain their surveillance of plaintiffs' property, and plaintiffs seek to remedy the violations occurring within the statutory period of limitations—the three-year period preceding this suit. That time period also applies to their claim for intentional infliction of emotional distress.

Defendants also argue this Court should reject plaintiffs' claims of fraudulent concealment to extend the limitations period. Given the above analysis under *Fraser*, whether defendants fraudulently concealed the operation of their cameras is irrelevant.

Consequently, defendants have not shown the wrong occurred when they installed the cameras more than three years before suit. Rather, the wrongs occurred when the recordings were made under the analysis in *Fraser,* and those recordings occurred within three years of plaintiffs' suit. Defendants are not entitled to judgment as a matter of law on the basis of the statute of limitations.

## B. SUMMARY DISPOSITION WAS PREMATURE BECAUSE DISCOVERY WAS INCOMPLETE

Plaintiffs contend the trial court erred in granting summary disposition before discovery was complete in this case. We agree.

Typically, summary disposition under MCR 2.116(C)(10) is premature when discovery has not closed. *Redmond v Heller*, 332 Mich App 415, 448; 957 NW2d 357 (2020). If discovery may have yielded facts to support the nonmoving party's claims, summary disposition should not have been granted. See *Nicholl v Torgow*, 330 Mich App 660, 675; 950 NW2d 535 (2019) (noting that a summary decision generally is inappropriate if discovery is not complete unless it is unlikely that additional discovery will yield support for the position of the nonmoving party). Where there are material questions of fact, summary disposition is precluded. *Estate of Taylor v Univ Physician Group*, 329 Mich App 268, 276; 941 NW2d 672 (2019).

In this case, discovery had not commenced, so the trial court relied on discovery in the prior action.[4] The trial court emphasized that plaintiffs failed to include any video evidence or still photographs recorded by defendants' cameras although plaintiffs' expert had "full access" to the videos stored in defendants' system. But the trial court apparently overlooked St. Peter's affidavit, where he stated that he was able to download only about 4,800 of the hundreds of thousands of

---

[4] Defendants argue that plaintiffs' request in the prior action for summary disposition under MCR 2.116(I)(2) operates as a concession that discovery was complete. Defendants have not cited caselaw supporting their position that plaintiffs' request for summary disposition operated as a concession that full discovery had been conducted. Issues unsupported by legal authority are deemed abandoned on appeal. *Patel*, 344 Mich App at 280 n 6.

images from defendants' system in the limited time provided. The camera installer, Pickard, acknowledged that backing up the entire digital-video recording (DVR) would take days. Also St. Peter said defendants apparently had at least seven USB drives of surveillance material, none of which to his knowledge had been produced. Accordingly, the affidavits and deposition testimony negate the trial court's characterization of "full access."

Moreover, plaintiffs' experts suggested filming inside the home could occur. St. Peter said defendants' camera that points at plaintiffs' home captures video if plaintiffs open their window shades or use lighting at night. Robison referred to the "lewd intrusion" that could occur given the high-resolution images of plaintiffs and their visitors, even with very minimal lighting from plaintiffs' home. Even Pickard said he would have to see the recordings to determine whether they would prove or disprove his opinion that the cameras could not film through plaintiffs' window. The trial court, however, opted not to conclude the cameras might be able to film inside the home, reasoning that, even though the experts' opinions conflicted, St. Peter was unable to find any video or photographs showing the inside of the home. Further, the trial court observed plaintiffs had not provided such video or photograph.

The conflicting testimony from the experts, coupled with the truncated time allotted to St. Peter for full discovery, demonstrates that a genuine issue of material fact exists regarding whether defendants' cameras can film inside plaintiffs' home. Given the disputed facts, the trial court prematurely granted summary disposition to defendants. *Estate of Taylor*, 329 Mich App at 276.

## C. PLAINTIFFS ALLEGED SUFFICIENT FACTS TO CREATE A GENUINE ISSUE OF MATERIAL FACT ON THE INVASION OF PRIVACY CLAIM

The common-law tort of invasion of privacy includes intrusion upon seclusion. *LeGrow*, 258 Mich App at 193. Three elements are required to demonstrate a prima facie case of intrusion upon seclusion, including: "(1) the existence of a secret and private subject matter; (2) a right possessed by the plaintiff to keep that subject matter private; and (3) the obtaining of information about that subject matter through some method objectionable to a reasonable man." *Dalley v Dykema Gossett*, 287 Mich App 296, 306; 788 NW2d 679 (2010) (quotation marks and citation omitted). "An action for intrusion upon seclusion focuses on the manner in which the information was obtained, not on the information's publication." *LeGrow*, 258 Mich App at 193.

Hampering our review is the fact that discovery is incomplete regarding whether defendants' cameras can film inside plaintiffs' home via their bedroom window. For the sake of this analysis, and considering facts most favorably to plaintiffs, we assume defendants' cameras can film inside plaintiffs' bedroom. It is undisputed that the cameras film plaintiffs' backyard.

In deciding that plaintiffs had not shown the existence of a private subject matter, the trial court cited *Custer*, 248 Mich App 552, a Fourth Amendment case involving a police officer looking through the window of the defendant's home with a flashlight. The trial court erred, however, in citing *Custer* given this Court's conclusion that it is error to rely on Fourth Amendment cases when analyzing common-law privacy rights. *Doe v Mills*, 212 Mich App 73, 85-86; 536 NW2d 824 (1995). The aims of the Fourth Amendment and common-law privacy protections are not the same, where the former protects against certain governmental intrusions, while the latter protects the right to be free from unreasonable publicity of private matters. *Id.*

at 86. Further, a police officer's peering through a window on a single occasion, as in *Custer*, is not analogous to hostile neighbors' cameras constant recordings of their neighbors' bedroom and backyard, as alleged in this case.

The trial court also relied on *Lewis v Dayton Hudson*, where the plaintiff, an undercover police officer, alleged invasion of privacy in a fitting room where a security guard observed him placing his firearm on a chair and contacted the police. The plaintiff alleged invasion of privacy and the trial court granted summary disposition to the defendant. *Lewis v Dayton Hudson*, 128 Mich App at 167-168. This Court noted the defendant's posted signs regarding surveillance removed any expectation of privacy the plaintiff otherwise may have had. *Id.* at 172. Further, the Court cited with favor caselaw ruling that a fitting room offers only reduced privacy. *Id.* at 171-172. The Court ruled the conduct of the defendant's security guard was not objectionable, and the plaintiff's possession of a weapon inside the fitting room was not a private matter. *Id.* at 172. The Court added, however, its decision might have been different had the plaintiff been observed by a person not authorized to perform surveillance, or by a member of the opposite sex. *Id.* Further, the decision might change if the defendant's security guard utilized the information in an objectionable manner, rather than merely relating it to the police. *Id.* at 172-173.

*Lewis v Dayton Hudson* is not dispositive because it involved a commercial fitting room rather than the plaintiff's bedroom and backyard. The security guard also did not film, record, and retain the plaintiff's conduct, in contrast to this case. As noted by the *Lewis* Court, it is reasonable for a retailer to conduct surveillance to prevent shoplifting such that no unwarranted invasion of privacy occurs with that surveillance. *Id.* at 169-170. The question remains, however, whether it is reasonable for people to conduct surveillance of their neighbor's house and property and record the activity, thus "captur[ing] and preserv[ing] [it] for all time." *LeGrow*, 258 Mich App at 189 (quotation marks and citations omitted).

We acknowledge plaintiffs do not have a completely private backyard given its location on the private lake. The public cannot see into plaintiffs' backyard from the street. Also, a reasonable person may find highly offensive a neighbor's act of collecting hundreds of images of that person and especially their minor relatives and guests. Further, if cameras can film inside plaintiffs' home, then plaintiffs' claim should be submitted to a fact-finder. See *State Farm Fire & Cas Co v Couvier*, 227 Mich App 271, 275; 575 NW2d 331 (1998) (ruling that a fact-finder should decide whether landlord deliberately intended to surveil the tenant by installation of a surveillance mirror in tenant's apartment).

Under the circumstances, plaintiffs have set forth sufficient facts to create a genuine issue of material fact. We reject defendants' argument that plaintiffs have not shown a question of fact regarding the remaining elements of a privacy claim. The trial court erred in ruling defendants were entitled to judgment as a matter of law on this issue.

## D. THE TRIAL COURT DID NOT ERR IN DISMISSING PLAINTIFFS' STATUTORY CLAIM

Plaintiffs contend the trial court erred in dismissing their claim under MCL 750.539d. We conclude the trial court reached the correct result, but for the wrong reason.

The trial court dismissed the statutory claim for the same reasons it dismissed the common-law privacy claim. The statutory claim, however, requires a different analysis given the plain language of the relevant statutes.

MCL 750.539d provides, in relevant part:

(1) Except as otherwise provided in this section, a person shall not do either of the following:

(a) Install, place, or use in any private place, without the consent of the person or persons entitled to privacy in that place, any device for observing, recording, transmitting, photographing, or eavesdropping upon the sounds or events in that place.

(b) Distribute, disseminate, or transmit for access by any other person a recording, photograph, or visual image the person knows or has reason to know was obtained in violation of this section.

(2) This section does not prohibit security monitoring in a residence if conducted by or at the direction of the owner or principal occupant of that residence unless conducted for a lewd or lascivious purpose. [MCL 750.539d(1), (2).]

A person who violates the statute may be convicted of a felony. MCL 750.539d(3).

A "private place" is defined as "a place where one may reasonably expect to be safe from casual or hostile intrusion or surveillance but does not include a place to which the public or substantial group of the public has access." MCL 750.539a(1). In that sense, the analysis regarding whether a backyard or bedroom is a private place is similar to the analysis of a common-law invasion of privacy claim.

However, the penal code limits potential civil remedies for persons subject to unlawful eavesdropping:

Any parties to any conversation upon which eavesdropping is practiced contrary to this act shall be entitled to the following civil remedies:

(a) An injunction by a court of record prohibiting further eavesdropping.

(b) All actual damages against the person who eavesdrops.

(c) Punitive damages as determined by the court or by a jury. [MCL 750.539h.]

Although MCL 750.539d levies criminal liability for recording, photographing, and transmitting as well as eavesdropping, the plain language of MCL 750.539h limits recoverable civil damages to conversations to which eavesdropping occurs. The statute defines "eavesdropping" as "to overhear, record, amplify or transmit any part of the private discourse of others without the permission of all persons engaged in the discourse." MCL 750.539a(2).

The materials before this Court do not demonstrate that defendants' system has the capacity to record audio. Pickard testified that the cameras he installed at defendants' house do not have microphones, and he does not record audio for clients other than police departments. In light of Pickard's testimony and the fact that the cameras do not have microphones, defendants showed that no genuine issue of material fact existed on this point, and the burden shifted to plaintiffs to demonstrate a genuine issue of material fact regarding defendants' liability under the statute. See *Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996) (setting forth the burden-shifting process between the parties regarding genuine issues of material fact). Even though plaintiffs averred in affidavits they believed defendants eavesdropped on their private conversation, that reference was limited to "the" topic of "the" private "conversation." Plaintiffs refer to Susan Leonowicz possibly overhearing a single conversation, which is insufficient to support a claim of eavesdropping. The videos provided do not have sound. Plaintiffs have produced no evidence to rebut defendants' assertion that the security system does not record sound, and they have not persuasively argued that further discovery would give rise to a genuine issue of material fact on this point.

Accordingly, the trial court correctly dismissed plaintiffs' statutory privacy claim, although for an incorrect reason. This Court does not reverse a decision of the trial court when it reaches the correct result, even if its reason was wrong. *Bailey v Antrim Co*, 341 Mich App 411, 420; 990 NW2d 372 (2022).

### E. THE TRIAL COURT ERRED IN PREMATURELY DISMISSING PLAINTIFFS' INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

A claim of intentional infliction of emotional distress requires proof of: "(1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress." *Swain v Morse*, 332 Mich App 510, 534; 957 NW2d 396 (2020). The complained-of conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Lucas v Awaad*, 299 Mich App 345, 359; 830 NW2d 141 (2013) (citation and quotation marks omitted). Additionally, liability clearly does not extend to "mere insults, indignities, threats, annoyances, petty oppressions or other trivialities." *LeGrow*, 258 Mich at 196 (quotation marks and citation omitted). In light of the fact that it remains unclear whether defendants' cameras can film inside plaintiffs' home, the trial court erred in granting summary disposition on this count.

### IV. CONCLUSION

In summary, we conclude plaintiffs' lawsuit is timely under *Fraser*. The trial court erred in granting summary disposition to defendants when discovery was incomplete. The trial court erred in ruling defendants were entitled to judgment as a matter of law on common law invasion of privacy. The trial court did not err in dismissing plaintiffs' statutory privacy claim. The trial court should not have granted summary disposition on plaintiffs' claim of intentional infliction of

emotional distress absent a definitive showing that defendants' cameras cannot film inside plaintiffs' home.  The matter is remanded for further proceedings in accordance with this opinion.

Reversed in part, and remanded.  We do not retain jurisdiction.

/s/ Daniel S. Korobkin
/s/ Adrienne N. Young
/s/ Mariam S. Bazzi